UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JONATHAN GARFINKLE,

                                          Plaintiff,

                    -v-

THE CONFERENCE ON JEWISH
MATERIAL CLAIMS AGAINST
GERMANY, INC. and GREGORY
SCHNEIDER,

                                          Defendants.

19-CV-7007 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Jonathan Garfinkle brings this action against The Conference on Jewish Material Claims

Against Germany, Inc. and its former Executive Vice President, Gregory Schneider, alleging that

Schneider sent a letter to Garfinkle's employer implying that Garfinkle was involved in improper

billing practices at a previous place of employment.  The letter resulted in Garfinkle's

termination.  Garfinkle sues for intentional infliction of emotional distress, defamation, tortious

interference with business relations, and civil conspiracy.  Defendants have moved to dismiss.

For the reasons that follow, the motion is granted.

I.      Background

The following facts are taken from the complaint (Dkt. No. 2 ("Compl.")) and are

assumed true for purposes of this motion to dismiss.

Defendant The Conference on Jewish Material Claims Against Germany, Inc. (the

"Claims Conference") is a nonprofit organization that negotiates with the German government to

obtain payments for Holocaust survivors.  (Compl. ¶¶ 10, 11.)   The payments are distributed

through various organizations, including the Jewish Family Service of Greater New Haven ("JFS

New Haven") and the Jewish Community Services of South Florida ("JCS Florida").  (Compl. ¶ 11.)

Plaintiff Jonathan Garfinkle was JFS New Haven's Executive Director.  (Compl. ¶ 2.)  In February 2018, he left to become Chief Operating Officer of JCS South Florida.  (*Id.*)  After his departure, JFS New Haven conducted an audit and found "reason to believe" the organization had engaged in improper billing practices during Garfinkle's tenure.  (Compl. ¶ 75.)  JFS New Haven informed the Claims Conference of its findings.  (Compl. ¶¶ 73.)  Accordingly, on August 2, 2018, Defendant Gregory Schneider, who at the time was Executive Vice President of the Claims Conference, sent a letter to JCS Florida indicating that the Claims Conference was "unwilling to work with Mr. Garfinkle in any capacity."  (Compl. ¶ 56.)  The letter sought "assurance that, effective immediately, Mr. Garfinkle will have no interactions or responsibilities with respect to . . . any future grants."  (*Id.*)  As a result, Garfinkle's employment with JCS Florida was terminated.  (Compl. ¶ 62.)

Garfinkle brings suit against the Claims Conference and Schneider, claiming intentional infliction of emotional distress, defamation, tortious interference with business relations, and civil conspiracy.  (Compl. ¶¶ 94–114.)  Garfinkle seeks compensatory and punitive damages, injunctive relief, and fees and costs.  (Compl. at 19.)  Defendants have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6).

## II.    Legal Standard

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible if the well-pleaded factual allegations of the complaint, presumed true, permit the court to "draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(citing *Twombly*, 550 U.S. at 556).

## III.   Discussion

Garfinkle claims intentional infliction of emotional distress, defamation, tortious

interference with business relations, and civil conspiracy.  The Court has diversity jurisdiction

under 28 U.S.C. § 1332(a)(2), as the parties are diverse (Compl. ¶¶ 6, 10, 12) and the amount in

controversy exceeds $75,000, exclusive of interests and costs (Compl. ¶¶ 47, 100, 109).

Each claim is taken in turn.[1]

### A.      Intentional Infliction of Emotional Distress

Under New York law, the first element for a claim of intentional infliction of emotional

distress is "extreme and outrageous conduct."  *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702

(N.Y. 1993).  The standard for this element is exacting: "[l]iability has been found only where

the conduct has been so outrageous in character and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community."  *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983) (quoting

Restatement (Second) of Torts § 46, cmt. d).  Indeed, the threshold for outrageousness is so

demanding that, "of the intentional infliction of emotional distress claims considered by [the

New York Court of Appeals], *every one* has failed because the alleged conduct was not

---

[1] A preambular concern is choice of law.  Garfinkle asserts that New York law governs, as Defendants' allegedly tortious conduct occurred in New York.  Defendants disagree, arguing that Garfinkle was living and working in Florida at the time and that Florida law should therefore govern.  (Dkt. No. 11 at 9 n.4.)  Defendants acknowledge, however, that "there is no material conflict between Florida and New York law" for any of Garfinkle's claims.  (*Id.*)  Accordingly, the Court applies New York law, the law of the forum state, and deems any conflict-of-law objection waived.  *See PI, Inc. v. Quality Prods., Inc.*, 907 F. Supp. 752, 760 n.3 (S.D.N.Y. 1995).

sufficiently outrageous." *Chanko v. Am. Broad. Cos. Inc.*, 49 N.E.3d 1171, 1179 (N.Y. 2016) (quoting *Howell*, 612 N.E.2d at 702).

Here, the complaint alleges, in essence, that Defendants sought to "destroy Mr. Garfinkle's reputation and career" by "us[ing] their considerable leverage in the Jewish services community to force JCS Florida to terminate Mr. Garfinkle without any legitimate reason or explanation." (Compl. ¶ 3.) But this behavior, even if true, would not be sufficiently atrocious to sustain a claim of intentional infliction of emotional distress. *Cf. Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983) (holding that plaintiff's allegations — including that he was (1) told he would never be promoted because of his age, (2) transferred, demoted, and then fired both for his age and for reporting corporate fraud, and (3) forcibly and publicly escorted from the building by guards when he returned to pick up his belongings, which were dumped into the street — fell "far short" of the requirements for a claim of intentional infliction of emotional distress). Given the stringency of New York's outrageousness requirement, Garfinkle's allegations are inadequate, as a matter of law, to state a claim.

### B.    Defamation

To make out a claim of defamation under New York law, a plaintiff must prove that "(1) the defendant published a defamatory statement of fact to a third party, (2) that the statement of fact was false, (3) the false statement of fact was made with the applicable level of fault, and (4) either the false statement was defamatory per se or caused the plaintiff special harm." *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 485 (S.D.N.Y. 2013).

Garfinkle's defamation claim fails for want of falsity. The entirety of the letter sent by the Claims Conference reads:

> It has recently come to the attention of the Claims Conference that Mr. Jonathan Garfinkle has been named Executive Vice President and Chief Operating Officer of [JCF South Florida].

> Based upon our prior experience with another grantee agency that
> employed Mr. Garfinkle, the Claims Conference is unwilling to
> work with Mr. Garfinkle in any capacity.  We therefore request that
> you provide us with a written assurance that, effective immediately,
> Mr. Garfinkle will have no interactions or responsibilities with
> respect to the Claims Conference 2018 grants or any future grants.
> This includes any and all aspects relating to the funds, grant
> implementation and the Claims Conference program.   Please
> provide this written assurance no later than August 7.

(Dkt. No. 12-4 at 2.)  Garfinkle identifies no statement in this letter that is explicitly false.  (*See*

Dkt. No. 16 at 18–20.)  Rather, Garfinkle argues that the letter is defamatory by implication.  To

prevail, then, Garfinkle must "make a rigorous showing that the language of the communication

as a whole can be reasonably read both to impart a defamatory inference and to affirmatively

suggest that the author intended or endorsed that inference."  *Kshetrapal v. Dish Network, LLC*,

90 F. Supp. 3d 108, 117 (S.D.N.Y. 2015) (quoting *Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d

37, 37 (App. Div. 1st Dep't 2014)).  Garfinkle fails to make the requisite "rigorous showing" that

the Claims Conference intended an inference of fraud.  *See id.* (holding that a statement that

defendant "was unwilling to work with Plaintiff" was not defamatory by implication because the

statements did not "indicate that [the defendant] endorsed any particular reference" despite

"industry-wide knowledge" of a scandal).

Garfinkle's cases to the contrary are inapposite.  In *Elias v. Rolling Stone LLC*, 872 F.3d

97 (2d Cir. 2017), the Second Circuit held that a *Rolling Stone* article defamatorily implied that

"many or all fraternity members participated in alleged gang rape as an initiation ritual" because

the article quoted fraternity members saying things like "We all had to do it, so you do, too," *id.*

at 109.  There, of course, the defamatory implication can be drawn directly from the words used

in the statement.  Nothing of the sort exists in the Claim Conference's letter.  Similarly, in

*Agbimson v. Handy*, No. 17-CV-9252, 2019 WL 3817207 (S.D.N.Y. Aug. 14, 2019), the court

held that a defendant's specific references to fraudulent accounting practices, paired with a claim

that the plaintiff accountant declined to submit to scrutiny of his financial activity and a general accusation that plaintiff engaged in wrongdoing, was an "unmistakable indictment of [the plaintiff's] professionalism and rectitude as an accountant," *id.* at *6–7.  Again, however, in that case the defamatory implication can be drawn directly from the statement itself.  Here, in contrast, the Claim Conference's letter omits any reference to improper billing practices or other wrongdoing.  Thus, in the absence of specific "contextual statements indicating an intended defamatory inference," *id.* at *7, Garfinkle cannot make out a claim of defamation by inference.

### C.     Tortious Interference with Business Relations

Under New York law, the elements of tortious interference with a business relationship are that "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." *Catskill Dev., L.L.C. v. Park Place Entm't. Corp.*, 547 F.3d 115, 132 (2d Cir. 2008).  The third element — the requirement of a wrongful means — "makes alleging and proving a tortious interference claim with business relations 'more demanding' than proving a tortious interference with contract claim." *Id.* (quoting *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.*, 406 N.E.2d 445, 449 (N.Y. 1980)).  "'As a general rule,' in order to satisfy [this] element . . . 'the defendant's conduct must amount to a crime or an independent tort.'" *Global Packaging Servs., LLC v. Global Printing & Packaging*, 248 F. Supp. 3d 487, 494 (S.D.N.Y. 2017) (alteration omitted) (quoting *Carvel Corp. v. Noonan*, 818 N.E.2d 1100, 1103 (N.Y. 2004)).  Other conduct can also state a claim, but it must be "for the sole purpose of inflicting intentional harm on plaintiffs." *See id.*[2]

---

[2] *See also IQ Dental Supply, Inc. v. Henry Schein, Inc.*, 924 F.3d 57, 69 (2d Cir. 2019) ("[If] the defendant's interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct." (quoting *PPX Enters., Inc. v. Audiofidelity Enters., Inc.*, 818 F.2d 266, 269 (2d Cir. 1987)));

Here, for the reasons already stated, Garfinkle has not shown that Defendants' conduct was either criminal or independently tortious. *See supra* Sections III.A & III.B. Accordingly, Garfinkle must demonstrate that Defendants' conduct was undertaken with the "sole purpose" to harm him. That, too, he has not done. Although the complaint alleges, for example, that Defendants "acted with the intent to harm Mr. Garfinkle's career and reputation" (Compl. ¶ 98), such allegations are conclusory and are ignored on a motion to dismiss. *See, e.g.*, *Global Packaging*, 248 F. Supp. 3d at 495. And Garfinkle's other allegations fail to give rise to an inference of purely malicious purpose. Allegations, for example, that Defendants knew Garfinkle "had a very limited role in JFS New Haven's administration of the Holocaust Program" (Dkt. No. 16 at 10 (citing Compl. ¶¶ 54, 66, 77–83)), or that Defendants "made no effort to discuss their alleged concerns with Mr. Garfinkle before sending the [letter]" (*id.* (citing Compl. ¶¶ 55, 59)), or that Defendants "did not conduct any inquiry or investigation of their own before sending the [letter]" (Dkt. No. 16 at 11 (citing Compl. ¶¶ 55)), are inadequate. For one, the inference that Defendants had a malicious purpose is specifically undercut by other allegations in the complaint. According to the complaint, the Claims Conference granted JCS Florida almost $14 million annually (Compl. ¶ 48), and when Garfinkle reached out to the Claims Conference to determine the basis of its concerns, the Claims Conference indicated that it "would not allow Mr. Garfinkle to have any interaction with its funds" (Compl. ¶ 61). Those allegations support an alternative explanation: that the Claims Conference was motivated by a "self-interest[ed]" concern for the proper use of its funds. *Carvel*, 818 N.E.2d at 1103. And the

---

*Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013) ("[T]o state a claim, [the plaintiff] must sufficiently allege a crime or independent unlawful action by the defendants, or alternatively [the plaintiff] must plausibly allege that the defendants acted with the sole purpose of inflicting intentional harm on [the plaintiff].").

presence of factual allegations supporting an inference of self-interested motive counsels in favor of dismissal.[3]

But the existence of this alternative explanation for the Claims Conference's conduct would doom Garfinkle's claim even if the complaint lacked any specific factual allegations undercutting his own explanation. Simply put, the complaint's allegations are not sufficiently "suggestive" of malice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007). There is an "obvious alternative explanation" for the Claim Conference's conduct — that it sought to ensure the proper use of its funds — and that explanation renders Garfinkle's competing explanation "conceivable [but not] plausible. *Id.* at 567, 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 681 ("[T]hese allegations are consistent with [improper purpose] . . . [b]ut given more likely explanations, they do not plausible establish this purpose.").

Garfinkle's allegations are deficient for failure to plausibly allege improper motive. Accordingly, the Court declines to reach Defendants' other arguments challenging the sufficiency of this claim.

### D.    Civil Conspiracy

"It is textbook law that New York does not recognize an independent tort of conspiracy." *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 206 F. Supp. 3d 869, 913 (S.D.N.Y. 2016).

---

[3] *See, e.g.*, *Ace Arts, LLC v. Sony/ATV Music Pub., LLC*, 56 F. Supp. 3d 436, 453 (S.D.N.Y. 2014) (holding that malicious purpose was not properly pleaded for tortious interference claim because "Plaintiff's allegations . . . actually seem to support the opposite conclusion"); *JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 536 (S.D.N.Y. 2013) ("holding that an allegation that the defendant "acted solely out of malice" was "not only conclusory" but also "inconsistent with plaintiffs' other allegations that [the defendant] interfered with plaintiffs' relationships to gain a competitive advantage"); *Vinas*, 499 F. Supp. 2d at 434 (holding, on a motion to dismiss, that defendant's "[alleged] economic motivation . . . counsel[ed] against . . . a finding of malice").

Civil conspiracy liability must be premised on an "underlying, actionable tort." *Id.* Here,

Garfinkle's underlying tort claims are all dismissed; accordingly, conspiracy liability cannot lie.

**IV.      Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 10 and to close this

case.

SO ORDERED.

Dated: October 28, 2020
       New York, New York

_____
             J. PAUL OETKEN
         United States District Judge